JAMES STINSON, Plaintiff in Error, vs. H. L. DOUSEMAN, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The complaint of the Plaintiff below set forth that on the 7th day of February, 1854, the said Plaintiff entered into a written agreement with the Defendant, James Stinson, to convey to him, by warranty deed, Lot 1 in Block 18, in Rice & Irvine's addition to St. Paul, upon the performance of certain conditions by the said Defendant, to wit:   To pay to the Plaintiff the sum of eight thousand dollars, as follows: $2,000 on the first day of September, 1854, with interest from date at ten per cent. per annum; $2,000 on the 7th day of February, 1856, and $4,000 on the 7th day of February, 1858, with interest at ten per cent. per annum from date of agreement, payable annually; and also, to keep the buildings on said lot insured for $1500, in some good insurance company, and to have the policy of insurance made payable, in case of loss, to said Douseman; and to pay all taxes that should be assessed on said premises, from May 1st, 1853.   It was further provided, that in case of failure in the performance of either of the covenants of the said Stinson, the said Douseman should have the right to declare the contract void, and to recover all the interest which should have accrued upon the contract up to the time he should so declare it void, as rent, for the use and occupation of the premises; to take immediate possession thereof, and to regard the persons in possession, as tenants holding without permission.

The complaint then states that the Defendant did not, on the 1st September, 1854, or at any time previous, pay the Plaintiff $2,000 with interest, according to the contract, or any part thereof; that he did not have the buildings on the lot insured for $1500, in a good insurance company, and the policy made payable, in case of loss, to the Plaintiff; that he did not pay all the taxes assessed on said premises, from the first of May,

1853; and that he had entirely failed to perform any of the covenants and agreements on his part to be performed according to said contract.

That the Plaintiff, on the 14th of September, 1854, had declared the said contract void, by notice in writing: which notice set forth the reasons why the same was so declared void, to wit: on account of the non-performance of the covenants on his (Defendant's) part to be performed, as above mentioned; that said notice was duly served upon the Defendant by mail; and that the Defendant was indebted to the Plaintiff for all the interest which had accrued on said contract, from the date thereof until the 14th September, 1854, to wit: in the sum of $481 16,—for which sum the Plaintiff demands judgment.

The Defendant's answer admits the execution and delivery of the contract, and, in answer to the allegation in the complaint, to the effect that he had not paid the sum of $2,000 and interest on the 1st day of September, 1854, he says:

*First.* That on the 7th day of February, 1854, at Prairie du Chien, in Wisconsin, he (Defendant), at the request of the Plaintiff, for the payment of said sum and interest, executed and delivered to Plaintiff his (Defendant's) negotiable note, dated on that day, whereby he promised to pay the Plaintiff or order $2,000, on the 1st day of September 1854, with interest, at the rate of ten per cent. per annum from date, and which note was then and there accepted by Plaintiff, for the payment aforesaid, due September 1st, 1854.

*Second.* That, before the maturity of this note, the Plaintiff appointed N. Corwith & Co. of Galena his agents to receive payment thereof when due, and sent said note to them for collection; that, by an arrangement with the Plaintiff, said note was to be paid to said Corwith & Co. by a draft of Thomas Stinson, of Hamilton, Canada, the father and agent of Defendant, payable to order of said Corwith & Co.; that said Thomas Stinson, on behalf of Defendant, on the 21st day of August, 1854, drew his draft on R. K. Swift, at Chicago, for the sum of $2,138 75, and, at the request of Plaintiff, forwarded the same by mail to said Corwith & Co. having first made arrangements for the acceptance and payment thereof, and having reason to

believe that he had funds in the hands of said R. K. Swift to meet the same; that said draft was duly received by said Corwith & Co. at Galena, as agents of the Plaintiff, on the 25th day of August, 1854, and by them, with the consent of said Plaintiff, used and appropriated in their individual business as bankers; that on the 28th of August, the draft was presented at said Swift's office for payment, but owing to the absence of said Switt and his principal clerk, payment was refused by mistake, and on the same day the draft was protested for nonpayment; that, on the 1st day of September, 1854, said Corwith & Co. returned said note to Plaintiff, although the same had not matured, nor had said note been dishonored; that Thomas Stinson was not notified of such protest until the 7th day of September, whereupon he forwarded to the Plaintiff at Prairie du Chien, for the payment of said note, another draft, upon Messrs. Ward & Co. New-York, for the sum of £530, 2s. 4d. currency; that the same reached Prairie du Chien on the 11th of September, before the commencement of this action and prior to the date of the notice set forth in said complaint; that said last named draft was returned to said Thomas Stinson on or about the 25th day of September, but without objection as to the character, amount or value thereof.

*Third.* The Defendant further states that he was always ready to pay said note, from the maturity thereof, and still is; and that he tendered the full amount thereof to the Plaintiff on the 12th day of October, 1854, before the commencement of this action; and that he brings the money into court, &c. and that said note is still outstanding against him.

*Fourth.* The Defendant further states that he caused the buildings on said lot to be insured on the 21st day of February, 1854, by a good insurance company, and has kept the same insured ever since, for the sum of $1500; that on the 9th of October, 1854, he obtained the consent of said insurance company to transfer his (Defendant's) interest in said policy to Plaintiff, and on said day transferred said interest therein to said Plaintiff, and tendered the same to him, which he refused, and brings the same into court, &c. And avers, that said buildings had not sustained any loss or damage by fire, nor had the Plaintiff been damaged thereby in the premises.

*Fifth.* That it was the understanding and agreement of the parties to said contract, at the time of the execution thereof, that the amount thereafter to be paid by any insurance company for loss or damage by fire to said premises was to be applied by the Plaintiff as a payment *pro tanto* on the whole purchase-money, but that such stipulation had been inadvertantly omitted in said contract; and that Defendant had delayed making an assignment of said policy, for the purpose of seeing the Plaintiff to have such omission rectified.

*Sixth.* As to the allegation in the complaint concerning the non-payment of taxes, the Defendant answers: .That, on the 30th day of July, 1854, he paid the district school-tax assessed on said premises; that, on the 10th of October, he called upon the tax-collector to pay taxes for 1853, and found they had been paid by the Plaintiff on the 12th of September, 1854; that, on the 11th day of October, and before the commencement of this action, he had paid all taxes assessed on said premises for 1854; and that, on the 12th day of October aforesaid, and before the commencement of said action, he had tendered to the Plaintiff the sum of $40, for the taxes of 1853,—being full amount thereof, with interest; that Plaintiff had refused to receive the same, and Defendant now brings the same into court, &c.; that, on the 26th day of October aforesaid, Plaintiff had called upon Geo. L. Becker to pay certain taxes assessed upon said property by the City of St. Paul—said Becker then being the authorized agent to receive the same—and tendered to him the amount so assessed: which he (the said Becker), being also one of the attorneys for the Plaintiff in this action, then refused to accept, or give Defendant any satisfaction in the premises. And brings such assessments into court, &c. and says that he has paid and offered to pay all taxes assessed upon said premises since the 1st day of May, 1853, and that no loss or damage has been sustained by said premises by reason of any delay in the payment thereof; and that he has done and performed all of the covenants and agreements by him to be kept and performed in said contract set forth.

*Seventh.* As to the allegation of the non-payment of interest, the Defendant answers that he has paid all the interest due the Plaintiff by the terms of said contract, and is ready

and willing to pay to the Plaintiff according to the terms of said contract all the interest accruing thereon; and denies that the whole or any part of the interest accruing upon said contract remains due or owing from him to Plaintiff.

The Plaintiff demurred to the several parts of the Defendant's answer as follows:

To the first subdivision thereof,—Because no fact is stated showing that the Plaintiff agreed to receive said note in payment of the sum due upon the contract, or that he did accept and receive said note in payment of said sum, or that the Plaintiff ever agreed to relinquish or did relinquish any rights under the said contract; and because it appears that said note remained in the possession of and belonged to the Plaintiff until the same was due—that it had not been paid, and that the revocation of said contract by Plaintiff would be a bar to any action on the note.

To the second subdivision of said answer,—Because it does not relate to any allegations in the Plaintiff's complaint in any manner, but refers to matters wholly foreign to the subject-matter of the action, and amounts to nothing more than an averment that the Defendant did not pay the sum due the Plaintiff *because he had n't the money.*

To the third subdivision of said answer,—Because the action is upon a special contract to pay the Plaintiff $2,000 on the 1st day of September, 1854, and not that he would pay or tender $2,140 on the 12th day of October, 1854, after said contract had been declared void; and because the averment that the Defendant tendered the sum of $2,140, or any other sum, on the 12th October, 1854, is not an answer to the complaint for the breach of contract upon which the action is founded.

To the fourth subdivision of said answer,—Because the same is not responsive to any allegation in the complaint, and is an allegation to the effect that on the 14th day of September, 1854, and when the contract was declared void, the Defendant had utterly violated the provision therein in reference to insurance; and because this action is not for damages occasioned by fire, but for interest, as rent for use and occupation.

To the fifth subdivision of said answer,—Because it is an

attempt to set up an alleged verbal "understanding"—to add to, vary, and contradict the express terms of a written contract; and because the reasons set forth are insufficient to justify or excuse the violation of the contract, as any amount paid by an insurance company in case of loss would have been applied by operation of law, upon the purchase-money for the property specified in the contract.

To the sixth subdivision of said answer,—Because the contract was declared void by the Plaintiff on the 14th day of September, 1854; and no act done or attempted to be done thereafter by the Defendant, under or pursuant to the contract, in the exercise of his rights derived therefrom, is any legal defence to the Plaintiff's claim in this action.

And to the seventh subdivision of said answer,—Because the same is contradictory of itself and of the other portions of said answer.

The demurrer to the answer was sustained in the District Court with leave to answer over. Afterwards, the Plaintiff entered his judgment for want of an answer, and the Defendant obtained his writ of Error to review the proceedings of the District Court.

The following is the assignment of errors on behalf of the Plaintiff in Error:

That the Defendant may interpose, by way of answer, the equities arising in this case, and is not driven to his action for specific performance. *Laws of Min. of* 1853, *p.* 3, *et seq.;* 4 *Howard's Pr. R.* 350, *Dedrich vs. Hagsdadt;* 8 *Howard's Pr. R.* 416, *Hunt vs. Rodgers.*

That the acceptance by the Plaintiff of the Defendant's negotiable promissory note for the first $2,000 specified in the contract, was a satisfaction of the contract to that amount. *Chitty on Contracts, pp.* 769, 770, 6th *Amer. Ed.*

That the acceptance and conversion of the first draft drawn by Thomas Stinson—a third party—under the agreement averred in the answer, was a payment of said note, and the Plaintiff's remedy was on the draft. *Chitty on Contracts, pp.* 767—770, and cases cited.

Stinson *v.* Douseman.

That, from the time of making the contract and taking possession under it, the equitable title to the premises was in the Defendant, and could not be divested at the will of the Plaintiff, for the causes stated in the complaint.   2 *Lead. Cases in Eq.* 26, *et seq.; Story's Eq. Juris. secs.* 115—628.

Time is not of the essence of this contract: the principal object of the Plaintiff being to sell the property for a given sum. 2 *Lead. Cases in Eq.* 19, 29 ; 1 *McLean,* 375, *Longworth vs. Taylor;* 3 *McLean,* 148 ; 14 *Peters,* 372 ; 2 *Hill's Ch. R.* 121 ; 13 *U. S. Dig. p.* 235, *Nos.* 203, 206 ; 13 *Eng. L. and Eq.* 416, *Parkin vs. Thorwald ;* 6 *Wheaton,* 528, *Brasier vs. Gratz; Story's Eq. Juris. sec.* 1316 ; 5 *Condensed R.* 160, 164, 169 ; 3 *idem,* 522 *and note ;* 4 *Peters,* 449 ; 5 *idem,* 264 ; 6 *idem,* 389 ;. 4 *Dallas,* 345 ; 5 *Cranch,* 262.

That even if time was of the essence of the contract, and the acceptance of the Defendant's note was not a payment of the first $2,000 specified in the agreement, the Defendant has shown sufficient excuse for non-performance at the day, and equity will relieve him against the accident which occasioned it.   *Story's Eq. Juris. pp.* 747, 748, 771, 775—777.

That the proviso to the contract, except the finding the rule of damages, states a mere conclusion of law, and might have been omitted without changing the nature of the instrument or effecting the rights of either party under it.   2 *Lead. Cases in Equity, p.* 19, *Grayson vs. Riddle.*

If the proviso authorizes the Plaintiff to declare the contract void, and to oust the Defendant of his possession of the premises, then the omission to insure for a single day, or permitting a single dollar of the tax to remain unpaid for a single day after it was assessed, would have the same effect: and proves it clearly to be in the nature of a penalty or forfeiture, which a court of equity will not enforce.   *Story's Eq. Juris.* 1315—1319 ; *Chitty on Contracts,* 863—865.

That, under the proviso, non-performance, at most, only renders the contract voidable, and not *ipse facto* void.   [See contract.]

That if Douseman intended to declare the contract void upon Stinson's failure to perform at the day, he was bound to do so at the day ; and his omission so to do was an acquiescence in

the delay, and a waiver of his right to declare it void after the Defendant had offered to pay. 2 *Lead. Cases in Eq.* 30 ; 5 *Paige*, 225 ; 6 *idem*, 407 ; 7 *idem*, 37.

The Defendant, in any event, was entitled to reasonable notice of Plaintiff's intention to insist upon payment at the precise day. 2 *Lead. Cases in Eq.* 33, and cases there cited ; 3 *Phil. Ev.* 343, 345 ; *Chitty on Contracts*, 771, *et seq.*

That the acceptance by the Plaintiff of Defendant's note,—which would not mature until after the day named in the contract for the payment of the first $2000,—even if it was not a satisfaction *pro tanto* of the contract, and Plaintiff's conduct respecting the first draft, had a tendency to induce the Defendant to believe that the precise day was not essential and would not be insisted on. 2 *Lead. Cases in Eq.* 19, and cases there cited ; 8 *Paige* 423—600.

Where there has been a part performance, as a part payment of the purchase-money—payment of taxes, &c. and a delivery of possession to the Defendant,—mere lapse of time, unless the delay was very great, would form no excuse to convey by the Plaintiff. 3 *Phil. Ev.* 344, and cases cited ; 3 *Monroe*, 313, 318, 322 ; 4 *idem*, 500, 501 ; 6 *Monroe*, 362, 365, 368 ; 4 *Bibb*, 453, 536 ; 4 *J. J. Marshall*, 157 ; 1 *Howard*, 358.

In all cases where time is an essential part of the contract, and where there has been a part performance, *courts* of equity will enforce the contract, unless there is some evidence of either actual or presumptive abandonment. 2 *Lead. Cases in Eq.* 29, 30 ; 3 *John. Cases*, 60, *Ballard vs. Walker ;* 2 *Devereaux Eq.* 224 ; 4 *Munf.* 332, 333.

The failure of the Defendant to perform at the day was the result of accident or mistake, against which equity will never refuse to relieve. [See authorities on subject of specific performance.]

The Plaintiff cannot maintain this action without showing that he has sustained injury, and not then if such injury will admit of compensation. 2 *Lead. Cases in Eq.* 3 *et. seq. Seaton vs. Slade ;* 3 *Phil. Ev.* 344, 345, and cases there cited.

The mere non-payment of money at a specified day is no excuse for refusing to convey, because if an injury result from it it may be compensated by money, and a court of equity will

Stinson *v.* Douseman.

decree a performance. 2 *Lead. Cases in Eq.* 17, and cases there cited.

That if the contract could be declared void, the Defendant would suffer a positive injury, which cannot be compensated by any known rule of damages, and therefore it would be inequitable to allow the Plaintiff to recover in this action. 2 *Lead. Cases in Eq.* 26, 31.

That the Defendant had both the ability and intention to perform his part of the contract, and was only prevented from performing by accident or mistake; and where the ability and intention both exist, equity will compel the Plaintiff to perform, unless the Defendant has been guilty of gross negligence.

That had the parties intended to have made time of the essence of the contract, they would have so declared it in the proviso; and naming a day for payment is merely formal, and means nothing more than that the payment shall be made in a reasonable time. 2 *Lead. Cases in Eq.* 18; *Story's Eq. Juris.* 1360.

[The points and authorities on behalf of the Defendant in Error are not on file.]

EMMETT & MOSS, and D. COOPER, Counsel for Plaintiff in Error.

RICE, HOLLINSHEAD & BECKER, Counsel for Defendant in Error.

The Judgment of the Court below was affirmed.
[No opinion on file.]